UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| T.R.,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 23-cv-01191-LB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 12, 16 |

**INTRODUCTION**

The plaintiff seeks judicial review of the final decision by the defendant, the Commissioner of Social Security Administration, denying him Social Security Income disability benefits.[1] The Administrative Law Judge (ALJ) determined that the plaintiff, considering his age, education, work experience, and residual functional capacity, was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and was not disabled.[2] The plaintiff moved for summary judgment and the Commissioner opposed the motion

---

[1] Mot. – ECF No. 12. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] AR 27. Administrative Record (AR) citations refer to the page numbers in the bottom-right hand corner of the AR.

ORDER – No. 23-cv-01191-LB

and filed a cross-motion for summary judgment.[3] Pursuant to Civil Local Rule 16-5, the matter is submitted for decision without oral argument. The court grants the Commissioner's cross-motion and denies the plaintiff's motion.

**STATEMENT**

**1. Procedural History**

The plaintiff initially filed for a period of disability and disability insurance benefits pursuant to Title II of the Social Security Act on May 27, 2021.[4] On January 24, 2022, his initial application for Social Security disability benefits was denied.[5] Following the plaintiff's application for reconsideration, his claim was again denied on April 25, 2022.[6] Subsequently, the plaintiff's appointed counsel filed a written request for a hearing in front of an ALJ, which was received on June 20, 2022.[7] The plaintiff appeared before ALJ David LaBarre for a hearing on September 30, 2022, via telephone due to the COVID-19 pandemic.[8] On October 26, 2022, the ALJ issued an unfavorable decision.[9] On February 22, 2023, the Appeals Council denied the plaintiff's request for review and the ALJ's decision became the final administrative decision.[10] The plaintiff filed this action on March 16, 2023, and the parties each moved for summary judgment.[11] All parties consented to magistrate-judge jurisdiction.[12]

---

[3] Mot. – ECF No. 12; Cross-Mot. – ECF No. 16.

[4] AR 17, 65, 81, 95.

[5] AR 17, 96.

[6] AR 17, 101, 102.

[7] AR 17, 108–11, 112–13, 114.

[8] AR 17, 136, 145, 147.

[9] AR 18, 17–27.

[10] AR 1, 311–14.

[11] Compl. – ECF No. 1; Mot. – ECF No. 12; Cross-Mot. – ECF No. 16.

[12] Consents – ECF Nos. 7, 9.

**2. Department of Veteran's Affairs Disability Determination**

On December 2, 2019, the Department of Veteran's Affairs (VA) found the plaintiff totally and permanently disabled.[13] According to the VA's determination, the plaintiff's disabilities consist of: degenerative arthritis of the spine and intervertebral disc syndrome (IVDS); peripheral neuropathy in the right hand; impingement syndrome and rotator cuff and tendonitis in the bilateral shoulders; collateral ligament sprain with tendonitis and shin splints in the bilateral ankles; knee strain with shin splints instability in the bilateral knees; tinnitus; varicocele left (claimed as surgery for varicocele (groin)); neurogenic bladder; radiculopathy left and right (femoral and sciatic); residual scar (painful); erectile dysfunction; and loss of use of a creative organ.[14] These findings were primarily based on the VA's benefit questionnaires and medical records from October 2016 through July 2022, which were not provided.[15]

**3. Administrative Proceedings**

**3.1. Disability-Determination Explanations**

During the administrative process, non-examining doctors generated two disability-determination explanations, one related to the plaintiff's initial application and one at the reconsideration level.

At the initial level, the state doctors found that his primary impairment was a severe acute myocardial infraction, and his secondary impairment was severe disorders of the skeletal spine.[16] The doctors found the plaintiff to be not disabled despite these impairments.[17]

---

[13] AR 175.

[14] AR 153–55, 155–73.

[15] AR 155–56.

[16] AR 71.

[17] AR 77.

On reconsideration, the doctors affirmed the finding of the four medical impairments at the initial level.[18] They again found the plaintiff to be not disabled.[19]

### 3.2. Administrative Hearing

There was one administrative hearing, conducted by telephone, on September 30, 2022.[20] The ALJ heard testimony from the plaintiff and vocational expert (VE) Marcos Molinar.[21]

#### 3.2.1.1.  The Plaintiff's Testimony

At the hearing, the plaintiff was examined by his counsel and the ALJ. On questioning by the ALJ, the plaintiff testified that his highest education was a couple of years of community college and that he is a certified air traffic control specialist.[22] He worked as an air traffic controller for over fifteen years.[23]

The plaintiff testified that his heart attack impaired his ability to work.[24] Before his heart attack, as an air traffic controller he could occasionally lift and carry thirty pounds, worked eight-to-ten-hour shifts, and worked in the control tower that required him to frequently climb stairs and stand for four hours.[25] After his heart attack, he now has shortness of breath, a lack of energy, and his chest hurts.[26] When questioned about the accuracy of medical records where the plaintiff denied chest pain, shortness of breath, palpitations, and limitations on activities, he testified the records reflected how he was feeling on those specific days.[27] When asked about his activity level, the plaintiff stated that he tries to walk five days a week for forty-five minutes during his

---

[18] AR 86.
[19] AR 93.
[20] AR 32–63.
[21] AR 32.
[22] AR 37.
[23] AR 38.
[24] AR 37.
[25] AR 38–39.
[26] AR 42–43.
[27] AR 43.

cardiovascular rehabilitations but was unsuccessful a lot of the time as the activities were very hard for him to complete.[28]

The plaintiff reported that, aside from his heart, he has issues with his back, leg, shoulders, knees, and hands.[29] Also, he suffers from gout that he claims exacerbates his back, leg, knee, and hand pain.[30] He testified that his gout is not under control because he has gout flare-ups that last for four or five days.[31] Even though he is on a large dose of "Allopurinol," his "body issues do not take to medicine well."[32] He also has a neurogenic bladder that causes him to have accidents and has gotten worse because of his heart attack.[33] On average, the plaintiff needs to use the bathroom three or four times per hour because of his neurogenic bladder.[34]

The plaintiff also testified that he could lift five or seven pounds and that if he lifted between ten or fifteen pounds, his hands would be on fire, hurt and be extremely painful.[35] He believes he could sit and stand for only ten minutes, after which he needs to shift, however, in a gout flare-up he is unable to walk anywhere.[36] He is unable to perform household chores, for instance he finds it very difficult to stand over a stove because it hurts.[37] Instead, his wife and kids handle most of, if not all of the chores at home.[38] The plaintiff claimed that before his heart attack, he had been working with some of his claimed impairments.[39] When asked what changed after the heart attack, the plaintiff testified that his job as a certified air traffic controller got harder to do with his

---

[28] *Id.*
[29] AR 44–47.
[30] AR 46.
[31] AR 46–47.
[32] AR 47.
[33] *Id.*
[34] AR 47–48.
[35] AR 48.
[36] *Id.*
[37] AR 48–49.
[38] AR 49.
[39] *Id.*

impairments.[40] Regarding pain medication use, the plaintiff testified that he is not on any medication because of his heart condition but uses Tylenol rarely.[41]

During his testimony, the plaintiff stated that he is five-foot-six-and-a-half to seven inches tall and that he weighed 194 pounds but clarified that his weight fluctuates.[42] He admitted that he lost about 20 pounds and hoped that being less heavy would take pressure off his joints.[43] Also, the plaintiff testified that he experiences migraines that come and go on a daily basis.[44] His migraines last sometimes up to three days and he last experienced a migraine about a week prior to his testimony.[45]

### 3.2.1.2.   The VE's Testimony

VE Marcos Molinar testified at the plaintiff's hearing.[46] He classified the plaintiff's prior work according to the Dictionary of Occupational Titles (DOT) as an air traffic controller, SVP level 7 with medium exertion.[47] The ALJ posed his first hypothetical to the VE: a hypothetical person of the plaintiff's age, education, and work experience who is able to perform light-exertion work activities and can (1) occasionally lift and carry 20 pounds; (2) frequently lift and carry 10 pounds; (3) stand and walk for six hours in an eight-hour workday with normal breaks; (4) sit for six hours in an eight-hour workday with breaks; (5) frequently balance; (6) occasionally stoop, kneel, crouch, and crawl; (7) occasionally climb ladders, ropes, and scaffolds; and (8) perform frequent fingering and handling bilaterally.[48] The VE responded that the hypothetical person could perform

---

[40] *Id.*

[41] AR 50.

[42] AR 50–51.

[43] AR 51.

[44] AR 51–52.

[45] AR 52.

[46] AR 52.

[47] AR 53.

[48] AR 53–54.

the plaintiff's past work.[49] The VE also testified that the hypothetical person could perform other work such as routing clerk, router, and storage-facility rental clerk.[50]

The ALJ posed a second hypothetical to the VE: a hypothetical person of the plaintiff's age, education, and work experience who is able to perform sedentary-exertion work activities and can (1) occasionally lift and carry 10 pounds; (2) frequently lift and carry 5 pounds; (3) stand and walk for two hours in an eight-hour work day with normal breaks; (4) sit for six hours in an eight-hour work day with normal breaks; (5) frequently climb ramps and stairs; (6) occasionally stoop, kneel, crouch, and crawl; (7) occasionally climb ladders, ropes, and scaffolds; and (8) perform frequent fingering and handling bilaterally.[51] The VE testified that the hypothetical person could perform the plaintiff's past relevant work.[52] The VE also testified that the hypothetical person could also perform other work such as document specialist, cashier II, and escort-vehicle driver.[53]

After questioning by the plaintiff's counsel, the VE reclassified the plaintiff's job title to air traffic control specialist to encompass a non-supervisory role.[54] Under this reclassification, the current job title is SVP level 8 with light exertion performed as medium.[55] The VE testified that with the revised classification, under hypothetical one, a hypothetical person could perform the plaintiff's past work.[56] Additionally, under the second hypothetical, the VE testified that a hypothetical person can perform the plaintiff's past work.[57]

The VE testified that the updated classification provided additional transferrable skills such as application or knowledge of advising, answering, and informing.[58] Based on these, a hypothetical

---

[49] AR 54.
[50] Id.
[51] AR 56–57.
[52] AR 57.
[53] Id.
[54] AR 58–59.
[55] AR 59.
[56] Id.
[57] Id.
[58] AR 60–61.

ORDER – No. 23-cv-01191-LB               7

person could perform the jobs of receptionist, order clerk, and information clerk.[59] The plaintiff's counsel asked whether in the hypothetical situation a person who needed to take unscheduled breaks up to four times an hour would be able to perform the plaintiff's past work.[60] The VE testified that at that rate and based on work experience, such breaks would be an accommodation.[61] Also, he testified that there are no jobs available where a person can take 20-minute breaks per hour.[62]

### 3.2.2. Administrative Findings

The ALJ analyzed the five-step process to determine whether the plaintiff was disabled and determined that he was not.[63]

At step one, the ALJ found that the plaintiff did not engage in substantial gainful activity since the alleged onset date of July 25, 2020.[64]

At step two, the ALJ found that the plaintiff had the following severe impairments:

> [M]ild degenerative disc disease of the lumbar spine; (2) mild degenerative changes of the thoracic spine; (3) status post coronary artery bypass grafting; (4) status post cardiopulmonary bypass; (4) status post heart attack; (5) obesity; (6) coronary artery disease; (7) idiopathic gout; (8) trigger finger of the bilateral thumbs . . . ; and (9) trigger finger of the right second MCP and 1st MCP.[65]

Also, at step two, the ALJ determined that the plaintiff had non-severe impairments of essential hypertension; prediabetes; mixed hyperlipidemia; abnormal liver function tests; chronic periodontitis; non-alcoholic fatty liver disease; alcohol use disorder; migraines with nausea; psoriasis; tobacco vaping; neurogenic bladder; bibasilar atelectasis; and tobacco use disorder.[66]

---

[59] AR 61.

[60] AR 61–62.

[61] AR 62.

[62] *Id.*

[63] AR 17–27.

[64] AR 19.

[65] AR 19–20.

[66] AR 20.

Furthermore, under step two, the ALJ determined that the plaintiff's allegations of fatigue and osteoarthritis of the hands are not medically determinable impairments.[67] The ALJ made this determination based on the plaintiff's failure to submit medical records showing clinical and laboratory diagnostic techniques that indicate these conditions from an acceptable medical source.[68]

At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.[69] The ALJ specifically addressed obesity based on the guidelines.[70] The ALJ stated that "obesity is not a listed impairment, however, the functional limitations caused by the medically determinable impairment of obesity, alone or in combination with other impairments, may medically equal a listing."[71] The ALJ considered obesity in the context of the record and found that the plaintiff's obesity did not equal a listing alone or in combination with other impairments.[72]

At step four, the ALJ determined that the plaintiff had an RFC to perform light work where he can "lift and/or carry twenty pounds occasionally and ten pounds frequently," "stand and walk for [five] hours in an eight-hour workday and sit for [six] hours in an eight-hour workday," "frequently climb ramps and stairs, and can occasionally stoop, kneel, crouch, and crawl," "occasionally climb ladders, ropes, or scaffolds," and "perform frequent fingering and handling bilaterally," but cannot "perform fast-paced work."[73] The ALJ then found that the plaintiff was "capable of performing past relevant work as an air traffic controller."[74]

Despite finding that the plaintiff could perform his past relevant work, the ALJ analyzed step five as well. At step five, the ALJ found that "[i]n addition to past relevant work, there are other

---

[67] Id.

[68] AR 20.

[69] Id.

[70] AR 21.

[71] Id.

[72] Id.

[73] Id.

[74] AR 26.

jobs that exist in significant numbers in the national economy that the claimant also can perform." These were office helper, router, and storage-facility rental clerk.[75]

The ALJ then found that the plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and concluded that the plaintiff was not disabled.[76]

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (cleaned up); 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (cleaned up). The reviewing court should uphold "such inferences and conclusions as the [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence in the administrative record supports the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999). "Finally, [a court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## GOVERNING LAW

An SSI claimant is considered disabled if (1) he suffers from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the

---

[75] AR 26–27.

[76] AR 27.

"impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A) & (B). The five-step analysis for determining whether a claimant is disabled within the meaning of the Social Security Act is as follows. *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

> **Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4)(i).
>
> **Step Two.** Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(a)(4)(ii).
>
> **Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii).
>
> **Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).
>
> **Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

For steps one through four, the burden of proof is on the claimant. At step five, the burden shifts to the Commissioner. *Gonzales v. Sec'y of Health & Hum. Servs.*, 784 F.2d 1417, 1419 (9th Cir. 1986).

**ANALYSIS**

The plaintiff seeks reversal and remand of the Commissioner's decision on four grounds: (1) the ALJ failed to properly consider the plaintiff's symptom testimony; (2) the ALJ failed to properly consider the VA's disability determination; (3) the ALJ failed to include the effects of the plaintiff's obesity in his RFC determination; and (4) the ALJ's RFC determination was improper because it was not based on substantial evidence.

**1. Whether the ALJ Improperly Rejected the Plaintiff's Symptom Testimony**

In assessing a claimant's credibility, an ALJ must make two determinations. *Molina*, 674 F.3d at 1112, *superseded by regulation on other grounds as stated in Thomas v. Saul*, 830 F. App'x 196, 198 (9th Cir. 2020). "First, the ALJ must determine whether [the claimant has presented] objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*; *see also* 20 C.F.R. § 404.1529(a). Second, if the claimant produces that evidence, and "there is no evidence of malingering," the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Molina*, 674 F.3d at 1112 (cleaned up).

"The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014) (in order to have a meaningful appellate review, the ALJ must explain its reasoning; "[g]eneral findings are insufficient"); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn*, 495 F.3d at 636 (cleaned up); *see also* 20 C.F.R. § 416.929. And the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

Here, the ALJ provided specific, clear and convincing reasons at step two, in the form of

objective medical evidence that was inconsistent with the plaintiff's testimony (including the plaintiff's past statements reflected in medical records), the plaintiff's non-compliance with his gout treatment, and the plaintiff's daily activities. The ALJ's decision, which did not completely discredit the plaintiff's symptom testimony, was sufficient. The court denies remand on this ground.

### 2. Whether the ALJ Erred in Weighing the VA's Disability Rating

Previously, an ALJ had to consider the VA's disability finding in reaching her decision regarding a claimant's disability. *McCartey v. Massanari*, 298 F. 3d 1072, 1076 (9th Cir. 2002). But "the 2017 regulations removed any requirement for an ALJ to discuss another agency's rating," including the VA's. *Kitchen*, 82 F.4th at 738–39. The plaintiff points out that an ALJ must "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [she] receive[s] as evidence." 20 C.F.R. § 404.1504. But the plaintiff then argues only that the ALJ failed to consider the VA's actual findings, not the evidence underlying the ALJ's findings. Because the ALJ was not required to consider those findings, the court denies remand on this ground.

### 3. Whether the ALJ Failed to Include the Effects of Obesity in the Plaintiff's RFC Determination

"While obesity is no longer listed among the Listing of Impairments, it is still classified as a medically determinable impairment that must be considered in disability assessments." *Browning v. Colvin*, 228 F. Supp. 3d 932, 942 (N.D. Cal. 2017) (citing SSR 02-1p, 2002 WL 34686281). "In evaluating obesity to determine a claimant's RFC, the ALJ's assessment 'must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005)). "As with other impairments, the ALJ should explain how he determined whether obesity caused any physical or mental impairments." *Id.* (citing SSR 02-1p).

Furthermore, SSR 96-8p provides:

> In assessing RFC, the adjudicator must consider only limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may — when considered with limitations or restrictions due to other impairments — be critical to the outcome of a claim.

*Id*. (quoting SSR 96-8p). An ALJ has a duty to assess the impact of the plaintiff's obesity on all steps of the sequential analysis. *Browning*, 228 F. Supp. 3d at 943.

In *Celaya v. Halter*, for example, the ALJ excluded the claimant's obesity from his analysis, and the Ninth Circuit remanded and directed the ALJ to complete a step-three analysis "that explicitly accounts for the direct and marginal effects of the [claimant's] obesity during the period in question and that culminates in reviewable, on-the-record findings." 332 F.3d 1177, 1182–83 (9th Cir. 2003). The court observed that "it was clear from the record that [the claimant's] obesity was at least close to the listing criterion, and was a condition that could exacerbate her reported illness," which included diabetes and hypertension. *Id.* at 1182. Thus, the ALJ "was responsible for determining the effect of [the claimant's] obesity upon her other impairments, and its effect on her ability to work and general health, given the presence of those impairments." *Id.*

All that said, it is the plaintiff's initial burden to establish disability, and so the plaintiff must "point[] to . . . evidence of functional limitations due to obesity which would have impacted the ALJ's analysis." *Burch*, 400 F.3d at 683. In *Burch*, for example, "the only evidence in the record relating to [the plaintiff's] obesity [was] notes from doctors who observed weight gain, indicated that [she was] obese, and recommended that she participate in a medically supervised weight loss program." *Id.* Regarding the RFC determination, the plaintiff did not "set forth, and there [was] no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider." *Id.* at 684. The Ninth Circuit thus affirmed the district court's denial of remand. *Id.*

Here, the plaintiff contends that the ALJ did not consider the plaintiff's obesity when determining the plaintiff's RFC. The ALJ had found that the plaintiff had a severe obesity impairment.[77] In the RFC discussion, the ALJ noted obesity as a comorbidity and, in evaluating

---

[77] AR 19, 21.

ORDER – No. 23-cv-01191-LB         14

the opinion of the State agency reviewer at the initial level, the ALJ said the "limitation [of] light exertional work [is] . . . consistent with the [plaintiff's] longitudinal treatment record including . . . obesity."[78]

The plaintiff argues that, even though the record showed "mild degenerative changes in the lumbar spine" (which is "a weight bearing joint") and "documented back pain," the ALJ did not properly consider the plaintiff's obesity with respect to the RFC because the ALJ did not "consider whether [the plaintiff] has more pain or symptoms as a result of his obesity."[79]

Although the plaintiff has pointed to impairments in the record that could in theory be affected by obesity, he has not pointed to evidence in the record indicating that his obesity has an effect on those impairments. This does not carry the burden, stated in *Burch*, that the plaintiff "set forth . . . evidence in the record[] of . . . functional limitations as a result of [his] obesity that the ALJ failed to consider." *Id.* at 684. Instead, the plaintiff has essentially set forth the generalized problem of obesity. Had the ALJ relied on the plaintiff's VA determination, for example, the degenerative spine changes and back pain might be deemed service related.[80] The court thus denies remand on this ground.

### 4. Whether the ALJ's RFC Determination is Based on Substantial Evidence

Finally, the plaintiff contends that the ALJ erred in determining his RFC on the ground that the ALJ "improperly weighed the medical evidence." In support, the plaintiff relies in part on the VA determination, but the court has already rejected that argument. Otherwise, the plaintiff argues that his heart attack and hand impairments should have been given greater weight.[81]

"[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); see also *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("it is the responsibility of the ALJ, not

---

[78] AR 24–25.

[79] Mot. – ECF No. 12 at 14–15.

[80] AR 153.

[81] Mot. – ECF No. 12 at 15–16.

[a] physician, to determine residual functional capacity [RFC]"). The ALJ's determination of a claimant's RFC must be based on the medical opinions and the totality of the record. 20 C.F.R. §§ 404.1527(d), 404.1546(c). Moreover, the ALJ is responsible for "'resolving conflicts in medical testimony, and for resolving ambiguities.'" *Garrison*, 759 F.3d at 1010 (quoting *Andrews*, 53 F.3d at 1039). In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *see also Orn*, 495 F.3d at 630 ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (cleaned up).

As the Commissioner contends, the ALJ based his RFC findings on an analysis of the record as a whole, and that analysis is supported by substantial evidence. For example, the plaintiff reported improvement after his heart attack. The court denies remand on this ground too. The court thus grants the Commissioner's cross-motion for summary judgment.

## CONCLUSION

The court denies the plaintiff's motion for summary judgment and grants the Commissioner's cross-motion for summary judgment. This resolves ECF Nos. 12 and 16.

**IT IS SO ORDERED.**

Dated: March 31, 2024

_____
LAUREL BEELER
United States Magistrate Judge